# Commonwealth v. Rivera

C.P. of Bucks County, no. 2007-5697.

*Maureen Flannery Span,* for the Commonwealth. *Ronald Elgart,* for the defendant.

BOYLAN, *J.,* March 19, 2010—Defendant, Justo Tuty Rivera, pled guilty to criminal attempt—first-degree murder, criminal attempt—rape by forcible compulsion, aggravated assault, and related offenses. Following his plea, defendant received an aggregate sentence of 22 1/2

to 45 years in a state correctional facility. Defendant now appeals the dismissal of his first petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §9541 et seq.

The following is a summary of the relevant facts. On June 8, 2007, officers from Bensalem Township Police Department responded to the Neshaminy Mall, located in Bucks County, Pennsylvania, to the area of the family restroom for the report of an assault with a knife. N.T. 12/4/07, p. 19. The victim advised the police that she had been working at the Dunkin' Donuts in the food court area of the mall and that she went to use the bathroom, which was a family bathroom. N.T. 12/4/07, pp. 19-20. When the victim entered the family bathroom, the defendant was seated on a bench. N.T. 12/4/07, p. 20. The victim asked the defendant which bathroom was unlocked and he pointed to the right side. N.T. 12/4/07, p. 20. The victim entered that bathroom and as she was closing the door, the defendant approached her from behind, and grabbed her around the neck. N.T. 12/4/07, pp. 20-21. The defendant said "fuck you, open yourself" to the victim and began to unbuckle his pants. N.T. 12/4/07, pp. 21, 23.

The victim screamed and begged him to stop. N.T. 12/4/07, p. 24. The defendant then pulled out a knife and placed it against the victim's throat and began to cut her. N.T. 12/4/07, p. 24. The defendant told the victim that he was going to kill her and she grabbed the knife and in the process cut her hand. N.T. 12/4/07, p. 24. The victim began to scream and the defendant fled. N.T. 12/4/07, p. 24.

Bensalem police officers and mall security reviewed the mall's video surveillance tapes and they observed the defendant, after the incident, exit the mall near the engineering dock doors. N.T. 12/4/07, pp. 24-25. He set his shirt and knife on the ground and placed a barrel over top of them. N.T. 12/4/07, pp. 24-25. These items were recovered by the police and placed into evidence. N.T. 12/4/07, p. 25.

The victim was treated at a local hospital for lacerations under her chin, on her neck, and several lacerations to her left hand and fingers. N.T. 12/4/07, p. 29. She received 26 stitches in her hand. N.T. 12/4/07, p. 29. As a result of the attack, she still has numbness and pain in her left hand, and has been unable to return to work. N.T. 12/4/07, p. 29.

On June 9, 2007, Bensalem police received an anonymous call that identified the male actor as the defendant. N.T. 12/4/07, p. 25. Later that night, at police headquarters, the victim positively identified the defendant in a photograph lineup as the actor who assaulted her. N.T. 12/4/07 pp. 25-26. Police apprehended the defendant in his home and recovered a white tank top with visible blood stains on it. N.T. 12/4/07, p. 26. Back at headquarters, defendant admitted that he was at the mall and gave the following statement:

"I hurt somebody for no reason last night. I just decided to go to Neshaminy Mall. I got the knife from the apartment. Nothing special made me pick the Indian lady. I just saw her. . . . . I was gonna rob and fuck the Indian lady. I didn't do it because she was making too much noise. I knew I cut her . . . I undid my belt buckle because I was gonna fuck her . . . ." N.T. 12/4/07, pp. 26-28.

On December 4, 2007, defendant entered a plea of guilty to one count of criminal attempt—first-degree murder,[1] one count of criminal attempt—rape by forcible compulsion,[2] two counts of aggravated assault,[3] one count of recklessly endangering another person,[4] one count of terroristic threats with the intent to terrorize another,[5] one count of possession of a weapon,[6] and two counts of simple assault.[7] During the plea, the defendant stated that he did not recall the events that night because he was high at the time. Sentencing was deferred for a sexual offender assessment pursuant to 42 Pa.C.S. §9795.4. The assessment determined that defendant did not meet the criteria for a sexually violent predator. N.T. 3/6/08, p. 7.

On February 25, 2008, Defendant filed a pro se "motion for change of venue" and "motion to withdraw guilty plea." On March 4, 2008, defense counsel filed a "motion to withdrawal guilty plea and motion to appoint private counsel" on the defendant's behalf.

On March 6, 2008, defendant withdrew the "motion for change of venue," "motion to withdraw guilty plea," and "motion to withdraw guilty plea and motion to appoint private counsel," and he renounced a letter he wrote to the undersigned requesting to withdraw his plea. N.T. 3/6/08, pp. 2-6, 9-10. Sentencing was deferred again at

1. 18 Pa.C.S. §901(a).
2. 18 Pa.C.S. §901(a).
3. 18 Pa.C.S. §2702(a)(1); 18 Pa. C.S. §2702(a)(4).
4. 18 Pa.C.S. §2705.
5. 18 Pa.C.S. §2706(a)(1).
6. 18 Pa.C.S. §907(b).
7. 18 Pa.C.S. §2701(a)(1); 18 Pa. C.S. §2701(a)(3).

the request of the defense for further preparation. N.T. 3/6/08, pp. 7-8.

On March 18, 2008, after exercising his right of allocution, defendant received a total sentence of 22 1/2 years to 45 years in a state correctional facility. Specifically, defendant was sentenced to 10 to 20 years for Count 1, criminal attempt—first-degree murder; a consecutive 10 to 20 years for Count 2, criminal attempt—rape by forcible compulsion; and a consecutive 2 1/2 years to 5 years for Count 5, terroristic threats. N.T. 3/18/08, p. 18. Defendant also received a consecutive five years probation for Count 6, possession of a weapon. N.T. 3/18/08, pp. 17-18. No further penalty was imposed for the remaining offenses.

Additionally, we note that defendant was not a neophyte. At the time of his arrest, defendant was on federal parole for bank robbery. Defendant's prior record also includes convictions for possession with intent to deliver in 1999 and escape in 2006.

On March 28, 2008, defendant filed a "motion to modify and reconsideration of sentence." A hearing was scheduled for April 28, 2008, but cancelled because the defendant was taken into custody by the federal authorities two days prior to his hearing. On June 6, 2008 defendant filed a "motion to reschedule hearing." On July 3, 2008, a hearing was held on defendant's post-sentence motions. During the hearing, defendant apologized to the victim for this "heinous act" blaming it on the "combination of drugs and alcohol and the things that [he] had gone through in [his] life" and stated that he "wished it never happened." N.T. 7/3/08, pp. 7-8.

After the hearing, defendant's motion was denied. Defendant did not file a direct appeal.

On July 6, 2009, defendant filed his first Post Conviction Relief Act (PCRA) petition. On August 6, 2009, counsel was appointed. On September 14, 2009, the Commonwealth filed an answer. On October 15, 2009, defendant filed an amended PCRA petition. Hearings were held on defendant's PCRA petition on October 29, 2009 and October 30, 2009. At the conclusion of the hearings, the petition was denied.

On November 13, 2009, defendant filed a notice of appeal to the Superior Court. On November 30, 2009, defendant filed a statement of matters complained of on appeal.

The issues raised on appeal are whether trial counsel was ineffective: (1) "in his representation of defendant in that he informed/threatened he would abandon defendant if defendant did not plead guilty, thereby inducing a plea that was not intelligently or voluntarily made;" and (2) "for failing to file a direct appeal on behalf of defendant."

The standard of review upon the appeal from the denial of PCRA relief is whether the PCRA court's findings are supported by the record and are free of legal error. *Commonwealth v. Abu-Jamal,* 574 Pa. 724, 731, 833 A.2d 719, 723 (2003), *cert. denied,* 541 U.S. 1048 (2004). A defendant serving a sentence of imprisonment is eligible for relief under the PCRA if he pleads and proves by a preponderance of the evidence that the conviction or sentence resulted from one or more of the following:

"(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place;

"(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place;

"(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent;

"(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court;

"(v) [deleted]

"(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced;

"(vii) The imposition of a sentence greater than the lawful maximum; and/or

"(viii) A proceeding in a tribunal without jurisdiction." 42 Pa.C.S. §9543(a)(1-2).

Moreover, a defendant must plead and prove that an allegation of error has not been previously litigated or waived. 42 Pa.C.S. §9543(a)(3).

In Pennsylvania, our law presumes that "counsel has rendered effective assistance." *Commonwealth v. Taylor,* 933 A.2d 1035, 1041 (Pa. Super. 2007). (citation omitted) Therefore, in order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate the following three elements:

"(1) the underlying claim is of arguable merit;

"(2) counsel's action or inaction lacked any reasonable basis designed to effectuate [defendant's] interest; and

"(3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.*

The threshold inquiry in ineffectiveness of counsel claims is whether the issue, argument, and/or tactic which counsel has foregone, and which forms the basis for the assertion of ineffectiveness is of arguable merit, as counsel cannot be found ineffective for failing to pursue a baseless or meritless claim. *Id.* at 1041-42.

First, defendant argues that trial counsel was ineffective in his representation of defendant because he threatened the defendant that he would abandon him if he did not plead guilty, thereby inducing a plea that was not intelligently or voluntarily made.

During the guilty plea colloquy, defendant stated to this court that he was pleading guilty voluntarily and of his own free will. N.T. 12/4/07, p. 2. He affirmed that no one had made any threats to him in order to force him to plead guilty. N.T. 12/4/07, pp. 2-3. Defendant stated twice that he was satisfied with the representation provided by his attorney. N.T. 12/4/07, pp. 7-8, 17-18. Additionally, defense counsel colloquied defendant as to whether he

was satisfied with the representation. N.T. 12/4/07, pp. 16-18. Specifically, the following exchange occurred:

"Defense Counsel: And so far as you sit here today, Mr. Rivera, are you satisfied with the way I've represented you.

"Defendant: I am.

"Defense Counsel: And do you think I've spent sufficient time with you to talk about the case and additional time now as we prepared for sentencing and evaluations down the road?

"Defendant: Yeah, I trust you." N.T. 12/4/07, pp. 17-18.

The defendant also stated that he could read, speak, and write the English language, completed the eleventh grade, and was not under the influence of any alcohol, drugs, or medication. N.T. 12/4/07, pp. 6, 18-19. Finally, defendant admitted that he was pleading guilty because he was satisfied that he was in fact guilty and admitted to the facts. N.T. 12/4/07, pp. 15, 18. Consequently, this court found that defendant's guilty plea was knowingly, intelligently, and voluntarily entered and that the defendant understood the consequences of pleading guilty. N.T. 12/4/07, p. 19.

Additionally, at his next court hearing, defendant voluntarily withdrew his post-guilty plea motions and the following exchange occurred:

"Court: And are you satisfied with his representation of you?

"Defendant: I am satisfied with his representation of me." N.T. 3/6/08, pp. 5-6, 9.

Thereafter, during the PCRA hearing, trial counsel stated that he never threatened that the defendant would have to proceed to trial without his representation. N.T. 10/30/09, p. 30.

This court does not find the assertions that the defendant was threatened to be credible. Indeed the record demonstrates that defendant entered his guilty plea knowingly, voluntarily, and intelligently. Defendant has the burden to prove that his prior counsel threatened him to plead guilty. Therefore, the defendant has not proven the first prong of an ineffective assistance of counsel claim, specifically that the underlying claim is of arguable merit. Failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness. *Commonwealth v. Daniels,* 600 Pa. 1, 17-18, 963 A.2d 409, 419 (2009). Therefore, we do not need not reach the other prongs of the test.

Second, defendant argues that trial counsel was ineffective for failing to file a direct appeal on his behalf. At the outset, we note that the unjustified failure to file a requested direct appeal is ineffective assistance of counsel per se and that a defendant does not have to demonstrate his innocence or show that he likely would have succeeded on appeal in order to meet the prejudice prong of the test for ineffectiveness. *Commonwealth v. Mikell,* 968 A.2d 779, 781 (Pa. Super. 2009); see also, *Commonwealth v. Bath,* 907 A.2d 619, 622 (Pa. Super. 2006). However, before counsel will be deemed ineffective for failing to file a direct appeal, "the defendant must prove that he requested an appeal and that counsel disregarded that request." *Bath,* 907 A.2d at 622.

Generally, if counsel ignores a defendant's request to file a direct appeal, the defendant is entitled to have his appellate rights restored. *Commonwealth v. Spencer,* 892 A.2d 840, 842 (Pa. Super. 2006). A mere allegation will not suffice to prove that counsel ignored the defendant's request to file an appeal. *Id.* Rather, the burden is on the petitioner to plead and present evidence to this court that he, in fact, requested counsel to pursue a direct appeal within the requisite time period and that the request was ignored or rejected by trial counsel. *Commonwealth v. Collins,* 546 Pa. 616, 622, 687 A.2d 1112, 1115 (1996).

In the present case, defendant has also failed to meet this burden. During the PCRA evidentiary hearing, defendant stated that he asked trial counsel to file a direct appeal on his behalf and he believed that he made this request after the reconsideration hearing. N.T. 10/29/09, pp. 11-14, 37. Thereafter, trial counsel testified that the defendant never asked him to file an appeal. N.T. 10/30/09, pp. 24-26, 35-36. This court found counsel's statements to be believable. Accordingly, this court found that defendant failed to satisfy his burden of proving that he did in fact request an appeal and counsel disregarded that fact.

Additionally, counsel satisfied his constitutionally-imposed duty to consult with the defendant regarding his appellate rights. *Commonwealth v. Touw,* 781 A.2d 1250, 1254 (Pa. Super. 2001). Counsel discussed with the defendant that the only issue he could appeal would be the discretionary aspects of sentencing and that in his opinion the only true recourse the defendant had would be to file a PCRA petition. N.T. 10/30/09, pp. 24-26, 35-36.

For these reasons, the relief sought in defendant's PCRA petition was denied.